UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY M.,[1]

Plaintiff,

Case No. 4:25-cv-12961

v.

F. Kay Behm
United States District Judge

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos.17, 18)**[2]

## I. INTRODUCTION

Plaintiff Tammy M., proceeding *pro se*, brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability

---

[1] Consistent with guidance regarding privacy concerns in Social Security cases by the Judicial Conference Committee on Court Administration and Case Management, this district has adopted a policy to identify plaintiffs by only their first names and last initials. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

[2] Upon review of the motions, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Both parties have filed motions for summary judgment. ECF Nos. 17, 18. Plaintiff has also filed a reply. ECF No. 19.

For the reasons discussed below, Plaintiff's motion for summary judgment will be **DENIED**; the Commissioner's motion for summary judgment will be **GRANTED**; and the decision of the Administrative Law Judge (ALJ) will be **AFFIRMED**.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed applications for DIB and SSI on May 4, 2022, both of which alleged an onset date of March 1, 2004. ECF No. 8-1, PageID.42. Plaintiff was 41 years old on the alleged onset date, making her a younger person. *Id.*, PageID.310; *see* 20 C.F.R. § 404.1563. In her application, she alleged disability due to "tumor left thigh." *Id.*, PageID.314. Her applications were denied initially on January 20, 2023, and upon reconsideration on April 18, 2023. *Id.*, PageID.42. Plaintiff then submitted a written request for a hearing, which was held before the ALJ on March 6, 2024. *Id.*

On July 22, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.*, PageID.53. On July 14, 2025, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.*, PageID.34. Plaintiff timely filed for judicial review of the final decision. ECF No. 1.

On December 17, 2025, in lieu of filing a motion for summary judgment under the original scheduling order, Plaintiff filed a "motion oral argument" claiming that the administrative record was incomplete and that important documents were missing. ECF No. 12. The Commissioner responded that the identified records were either in the administrative record, were not customarily included in the administrative record, or were not identified with sufficient specificity, and argued overall that the administrative record was properly filed and Plaintiff had failed to show otherwise. ECF No. 13. On June 24, 2026, Magistrate Judge Kimberly Altman entered an order denying Plaintiff's motion, explaining that Plaintiff had not identified any specific error in the administrative record, but noting that the parties were free to cite the records at issue in their motions for summary judgment, as well as any additional records as long as Plaintiff provided a sworn affidavit that the documents were verified. ECF No. 15. Plaintiff then filed a motion for summary judgment on July 21, 2026, followed by the Commissioner's motion on August 7, 2026. ECF Nos. 17, 18.

**B. Medical Evidence[3]**

On July 8, 2010, Plaintiff presented to the University of Michigan, Flint Urban Health and Wellness Center with a lump on her left inner thigh that had been present for about six years. ECF No. 8-1, PageID.370-371. On examination, Diane Towers, FNP diagnosed Plaintiff with a lipoma and recommended that she see a surgeon. *Id.*, PageID.372. At a follow-up on July 28, 2010, Plaintiff's lab results and extremities were within normal limits, she had no peripheral edema, and her lungs were clear other than some diminished breath sounds. *Id.*, PageID.374.

On August 9, 2010, Plaintiff saw Christopher Ash, D.O. at Surgical Associates, who recommended excising the mass on her thigh and indicated that the surgery would be scheduled. *Id.*, PageID.424. At a follow-up appointment with Towers on October 27, 2010, Plaintiff reported mild dizziness for the past several months, lasting for about three seconds, but she denied headaches, vision changes, chest pain, shortness of breath, or palpitations, and her lungs were within normal limits. *Id.*, PageID.376. She reported weight loss of five pounds and that she was watching her diet and

[3] As the ALJ explained, the evidence in the record does not begin until July 2010, although Plaintiff alleged disability beginning on March 1, 2004. *See* ECF No. 8-1, PageID.48.

exercising by walking or riding her bicycle at least three to four times a week. *Id.*, PageID.376.

Two days later, because of her episodes of dizziness and lightheadedness, Plaintiff underwent an extracranial duplex scan, which indicated a 15 to 39 percent diameter reduction in the bilateral bulb internal carotid arteries. *Id.*, PageID.425. Plaintiff also underwent an ultrasound of her left thigh on December 2, 2010, which indicated that her lipoma was likely a benign lesion but an MRI was recommended if further evaluation was needed. *Id.*, PageID.378. At a visit with Towers the following week, Plaintiff indicated that after having a discussion with her surgeon, she had decided to watch her lipoma rather than have it removed. *Id.*, PageID.381. On examination, Plaintiff's physical findings were largely within normal limits. *Id.*

On December 18, 2012, Plaintiff had another ultrasound of her left thigh, and this time, Watler Harper, D.O. indicated that he could not differentiate whether the mass was benign or a tumor and recommended an MRI. *Id.*, PageID.387. On April 11, 2013, Plaintiff had an MRI of her left thigh, and the test revealed that there was "normal appearing fat in the area of palpable abnormality," and no focal mass lesions. *Id.*, PageID.482.

On September 21, 2021, Plaintiff saw Veronica Talevska, NP as a new

patient to establish care. *Id.*, PageID.398. Talevska noted Plaintiff's mass and ordered an ultrasound. *Id.*, PageID.400. Plaintiff appeared to be in no acute distress, and the rest of her physical examination was within normal limits. *Id.*, PageID.398.

Plaintiff underwent a consultative examination with Harold Nims, D.O. on November 18, 2022. *Id.*, PageID.413. Plaintiff reported to Dr. Nims that her chief complaint was the tumor on her left thigh, but she had also experienced bladder and stool incontinence over the past two years, although she had never discussed that with her doctors and had not seen a physician in two years. *Id*. Plaintiff also stated that she drove a car, shopped, lived alone, took care of all the household cleaning and cooking but at a slower pace, and was able to cut her grass with a riding mower. *Id*. Plaintiff added that she was not taking any medication, did not have a current primary care provider, and had no past hospitalizations. *Id.*, PageID.413-414.

On examination, Dr. Nims observed that Plaintiff ambulated with a normal gait; appeared stable in standing, sitting, and supine positions; and her chest and cardiovascular examinations were within normal limits, as was her abdominal examination except for positive bowel sounds. *Id.*, PageID.414-415. Dr. Nims also found that Plaintiff's upper extremity strength

was four out of five with stiff shoulder joints that were painful with motion but the rest of the examination was within normal limits; her finger squeeze was four out of five but the rest of her hand examination was within normal limits; and her lower extremity strength was four out of five with a golf ball-sized lesion on the left inner thigh but the rest of the examination was within normal limits. *Id.*, PageID.415-416. Dr. Nims further concluded that Plaintiff's cervical and dorsolumbar examinations were within normal limits; she could not walk on her heels and toes but could perform a tandem gait; she was able to bend; she had four out of five strength in her cervical and lumbar spine, hips, knees, ankles, toes, elbows, wrists, thumbs, and fingers; the rest of her neurological examination was within normal limits; and her range of motion testing was normal. *Id.*, PageID.416, 418-422. Dr. Nims concluded that Plaintiff's ability to perform bending, stooping, lifting, walking, crawling, squatting, carrying, pushing and pulling heavy objects, and traveling was mildly impaired. *Id.*, PageID.417.

Finally, on December 19, 2023, Plaintiff was seen by Elizabeth Marshall, M.D. at St. Mary's of Michigan for a new patient appointment and to evaluate the tumor on her leg. *Id.*, PageID.472. On examination, Dr. Marshall noted that Plaintiff had a large lipomatous mass on her inner left lower thigh but that

she was in no acute distress and the rest of her physical examination was within normal limits. *Id.*, PageID.474. Dr. Marshall recommended updated imaging, as Plaintiff's mass had not been imaged in over ten years and because of changes in size and pain, and also recommended Plaintiff consult plastic surgery to consider removal. *Id.*

### C. Hearing Testimony

At the hearing, Plaintiff testified that she has an associate's degree in health information technology. ECF No. 8-1, PageID.80. She lived in a ranch style house with a basement and struggled to go up and down the stairs, and she had a driver's license but would drive only once or twice a week. *Id.*, PageID.83. She was paid to watch her grandchildren for about 20 hours a week, which included making them breakfast and lunch. *Id.*, PageID.83-84.

Plaintiff testified that she was unable to work because she had a tumor on her leg and could hardly move, and because she was constantly using the bathroom. *Id.*, PageID.93. She also had pain that would shoot up her hip, through her back, and down her leg, and she could not sit still because of the pain. *Id.* The tumor on her leg had been there since 2004 and was scheduled to be excised but the surgery did not go through because "they didn't really know what it was," and it was entangled in nerves. *Id.*, PageID.94. The pain it

caused also got worse as she got older. *Id.*, PageID.95. She was not otherwise receiving treatment for it; she "live[d] with the pain" because she was "scared to death of doctors." *Id.* Aside from a physical in December 2023, she had not gone to the doctor since 2021 when she attempted to get an exemption from the COVID vaccine that her employer required. *Id.*, PageID.95. She was not granted the exemption, and as a result was unable to continue working at the retirement home where she was employed at the time. *Id.*, PageID.96. Plaintiff could not remember the name of the doctor that she saw for a physical in December 2023, but she said it was only an initial visit, and the results were "just more testing." *Id.*, PageID.100-101. She did not have a follow-up visit. *Id.*, PageID.100.

Plaintiff also indicated that she objected to the examination report of Dr. Nims. *Id.*, PageID.96. She said there were inaccuracies, and as such, the ALJ informed her that she could file objections in writing within ten days following the hearing. *Id.*, PageID.99. She was also informed that if she had objections to either Dr. Nims' report or anything else in the record, that she could file those objections in writing and send them to the hearing office. *Id.* The ALJ also informed Plaintiff that she could send in records from her physical in 2023 if she could find that information. *Id.*, PageID.101.

## III. FRAMEWORK FOR DISABILITY DETERMINATION (THE FIVE STEPS)

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant

> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps.... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act. At Step One, the ALJ determined that Plaintiff had engaged in substantial gainful activity since her alleged onset date, but that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. ECF No. 8-1, PageID.45. At Step Two, the ALJ found that Plaintiff had the impairments of soft tissue lesion on the left inner thigh, iron deficiency anemia, sinusitis, otitis media, obesity, urinary incontinence, and stool incontinence. *Id.* However, the ALJ also concluded

that Plaintiff did not have an impairment or combination of impairments that had significantly limited her ability to perform basic work-related functions for 12 consecutive months, and she therefore did not have a severe impairment or combination of impairments. *Id.* As a result, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.*, PageID.53.

## IV. STANDARD OF REVIEW

A district court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). Although a court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-225 (6th Cir. 2019); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

An ALJ's factual findings must be supported by "substantial evidence."

42 U.S.C. § 405(g). The Supreme Court has explained:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) (quoting *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 406 (6th Cir. 2009)) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The court must "take into account whatever in the record fairly

detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (citations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (citations omitted).

## V. ANALYSIS

### A. Bias

Plaintiff argues that various employees of the Social Security Administration and others "treated her with bias, willful deceit and trickery," including the ALJ; the Commissioner; Dr. Nims; state agency physicians Charles Murphy, M.D. and Ashok Sachdev, M.D.; state agency psychologist Robert Gerl, Ph.D.; disability adjudicator/examiner Cesar Bolet; disability examiner Kristen Tramel; social security representative Shanita Taylor; "B.

Edmonds Jr."; and her doctor, Dr. Marshall. ECF No. 17.

To start, Plaintiff has filed a complaint requesting review of the Commissioner's final decision under 42 U.S.C. § 405(g), and the Court is therefore limited to review of the ALJ's decision rather than review of the conduct of all the individual employees of the Social Security Administration earlier in the claims process and other unrelated non-parties. *See Tucker*, 775 F. App'x at 224-225 ("Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision."). The Court does note, however, that Plaintiff's complaints about the Administration's employees all essentially boil down to either the fact that they did not find her disabled or that they "concealed medical records," which, as discussed below, Plaintiff has provided no evidence of.

Related to Plaintiff's assertion that the ALJ was biased, "the court must start from the presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel*, 234 F.3d 1271 (6th Cir. 2000). As such, the party asserting bias bears the burden of proving, by convincing evidence, "that a risk of actual bias or prejudgment is present." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004)

(citation omitted). In other words, "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.* (citation omitted). The burden of showing bias is high. *See Epps v. Comm'r of Soc. Sec.*, No. 3:20-CV-01813-JRK, 2021 WL 3669260, at *15 (N.D. Ohio Aug. 3, 2021) (citing *Wells*, 234 F.3d at *5; *Howard v. Astrue,* No. 3:09cv00179, 2010 WL 1433438, at *5 (S.D. Ohio Mar.17, 2010)) (explaining that "behavior that was 'unbecoming a judicial officer' and 'arguably discourteous' to plaintiff and her counsel was not enough to demonstrate bias" and an "ALJ's statement to counsel, 'then please shut up. Okay?,' coupled with the fact that the ALJ stopped counsel's examination of plaintiff at two hearings, was not enough to show bias"), *report and recommendation adopted*, 2021 WL 3666413 (N.D. Ohio Aug. 18, 2021).

Plaintiff alleges that the ALJ was biased because he concealed medical records, abused his authority by making her resubmit medical records, deliberately stalled the hearing on November 8, 2023, concealed Plaintiff's objections, did not include letters mailed to Plaintiff in the record, and left office visits out of his decision. ECF No. 17, PageID.599. As the Commissioner argues, Plaintiff has provided no evidence to show that the ALJ was biased, nor is any bias evident from the record. At the November 8, 2023

hearing, Plaintiff asserted that the ALJ did not have all of her medical records, and he therefore postponed the hearing to give her time to provide those records. ECF No. 8-1, PageID.65, 69-70. After the March 6, 2024 hearing, the ALJ also allowed Plaintiff to submit additional records as well as her objections to the consultative examination. The ALJ explained in his decision that additional evidence was in fact obtained, as well as Plaintiff's responses, all of which was admitted into the record and considered in making his decision. *Id.*, PageID.42. Plaintiff does not otherwise include evidence of any incorrect or improper letters that were mailed to her, or any evidence that the ALJ concealed medical records or her objections. As for her claim that the ALJ failed to mention certain medical appointments, an ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953).

Ultimately, Plaintiff has failed to overcome the presumption that the ALJ was unbiased.[4] Further, as will be explained below, the ALJ's decision was

[4] As for her claim that the Commissioner—or the agency employees and ALJ—concealed 71 important documents (ECF No. 17, PageID.600; ECF No. 19, PageID.631), there is no indication that the administrative record was incomplete, but nonetheless, Plaintiff was

supported by substantial evidence, and Plaintiff has provided no reason to justify remanding his decision.

**B. Substantial Evidence**

Plaintiff also asserts in one sentence in her reply that the ALJ's decision is "not supported by credible evidence." *See* ECF No. 19, PageID.623. In the Commissioner's response, they explain that "[i]n Plaintiff's complaint[,] she sought judicial review of the denial of her DIB and SSI applications, and thus the Commissioner will address how the ALJ's decision is supported by substantial evidence." ECF No. 18, PageID.612. The Court will briefly do the same for the sake of completeness.

In coming to the conclusion that Plaintiff was not disabled, the ALJ evaluated Plaintiff's subjective symptoms, the evidence in the record, the opinion of the consultative examiner, and the prior administrative medical findings. *See* ECF No. 8-1, PageID.47. In analyzing her subjective symptoms, he considered her statements in treatment notes, her submitted statements, and her testimony, which indicated that she could watch her grandchildren, live alone, perform personal care activities, take care of her personal needs

---

free to cite the 71 documents that she claimed were concealed in her motion for summary judgment. *See* ECF No. 15. She declined to do so.

and grooming without needing any special reminders, prepare meals, help with some chores, drive, go out alone, shop in stores, pay bills, handle a savings account, use a checkbook, watch television, read, sew, play cards, go for walks, get along with friends, family, and neighbors, follow instructions, finish what she started, get along with authority figures, handle stress and changes in routine, and exercise by walking or riding a bike at least three to four times a week. ECF No. 8-1, PageID.52. He also explained that her treatment was generally routine and conservative in nature, consisting mostly of occasional medication, and that she did not seek emergency room treatment or require hospitalization. *Id*. Based on this, he determined that her allegations were inconsistent with the evidence in the record. *Id*. He referenced multiple records, summarized above, where Plaintiff was found to be in no distress, and found that none of Plaintiff's medical providers placed any specific work-related limitations on her. *Id*. Plaintiff does not challenge this analysis of her subjective symptoms as improper.

Further, in analyzing the objective medical evidence and concluding overall that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities, the ALJ summarized the record, which provided substantial

evidence for his ultimate decision. *Id.*, PageID.48-49. This included that on July 8, 2010, Plaintiff was diagnosed with a lipoma and her provider recommended she see a surgeon. On July 28, 2010, an examination found her extremities within normal limits and noted only that she had some diminished breathing sounds, and that she later had a visit with a surgeon who recommended excision. On October 27, 2010, Plaintiff reported complaints of dizziness and the associated examination, and had an extracranial duplex scan two days later, which indicated a reduction in her internal carotid arteries. Plaintiff had an ultrasound in December 2010 which indicated that the lipoma was likely a benign lesion, and Plaintiff later elected not to remove it but to keep an eye on it instead. Her examination in December 2010 was largely within normal limits. Two years later, another ultrasound indicated that the mass could be benign but could also be a tumor, and an MRI was recommended. The MRI revealed no focal mass lesions. Then, in September 2021, Plaintiff had a new patient appointment where an ultrasound was ordered to recheck her mass, but it does not appear that she ever completed it. Her examination at that appointment was within normal limits. Then, another two years later, Plaintiff was seen for another new patient appointment, where her provider again recommended updated

imaging, but it does not appear that it was ever completed. Her physical examination was largely normal at that time as well. Finally, after her consultative examination, Dr. Nims opined that Plaintiff was only mildly impaired in her abilities to perform work-related activities. The ALJ found that Dr. Nims' opinion was generally persuasive as it was consistent with the evidence as a whole, including the objective medical record. *Id.*, PageID.51. He also found that the opinions of the state agency medical consultants were persuasive because they were generally consistent with the available evidence and well-supported by explanation. *Id.* Plaintiff again does not challenge these determinations as improper.

All of this evidence, which the ALJ summarized in detail, provides support for the ALJ's ultimate conclusion that Plaintiff did not have any impairment or combination of impairment that significantly limited her ability to perform basic work activities for 12 consecutive months. The ALJ's determination was therefore supported by substantial evidence. Plaintiff has not otherwise made any arguments to the contrary or pointed out any errors in the ALJ's decision. For this reason, the ALJ's decision must be affirmed.

## VI. CONCLUSION

In sum, although Plaintiff may suffer from impairments that affect her

daily life, the ALJ's decision is supported by substantial evidence and there is no evidence of bias in the record.

For the reasons set forth above, Plaintiff's motion for summary judgment (ECF No. 17) is **DENIED**; the Commissioner's motion for summary judgment (ECF No. 18) is **GRANTED**; and the decision of the Administrative Law Judge (ALJ) is **AFFIRMED**.

**SO ORDERED**.

Date: September 21, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge